UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-MJ-5157-MAS |
| v. ) | 5:22-CR-51-DCR |
| ) | |
| MARICO DAWOOD ISHKIRAT ) | |
| PERKINS, ) | |
| ) | |
| Defendant. | |

**DETENTION OPINION AND ORDER**

The Complaint in this case alleged that Defendant Marico Dawood Ishkirat Perkins ("Perkins") possessed 500 grams or more of methamphetamine and 10 grams or more of fluorofentanyl with intent to distribute. [DE 1]. The Court finds that Perkins' prior failures to appear, extensive criminal history, and the seriousness of the instant charges require his detention based on nonappearance and danger to the community.

I. **RELEVANT FACTUAL, PROCEDRUAL, AND LEGAL BACKGROUND**

The Court conducted a detention hearing in this matter on May 4, 2022. [DE 7]. The Court previously found that the United States had a right to the hearing under 18 U.S.C. § 3142(f)(1)(B) and (C). [DE 5]. At the hearing, the United States sought Perkins's detention based on risk of flight and danger. The Court afforded Perkins and the United States all procedural rights provided by the Bail Reform Act ("BRA"). For the reasons described below, the BRA requires Perkins's detention.

The charges in this case normally give rise to a presumption of detention. However, at the request of the parties, the Court scheduled detention hearing prior to the preliminary hearing. Thus, the Court had not made a probable cause determination at the time of the detention hearing and the presumption did not apply to Perkins.[1]

Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality,

---

[1] The grand jury indicted Perkins on May 5, 2022, on four counts of possession with intent to distribute various controlled substances. *See* 5:22-CR-51-DCR-MAS. The citations to the record herein refer to the indictment case.

the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[2]

## II. ANALYSIS

The Court finds that the United States proved by a preponderance of the evidence that no conditions will assure Perkins's appearance at future court hearings and also succeeded in proving by clear and convincing evidence that Perkins poses a risk of danger to the community that no conditions of release will adequately mitigate.

---

[2] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
 (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
 (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

A.   **RISK OF FLIGHT**

The United States argued that Perkins is a flight or nonappearance risk, and that no conditions can reasonably target those risks. The United States pointed out Perkins's history of failing to appear for court on two occasions. [Pretrial Services Report at 3]. Moreover, Perkins has convictions for tampering with physical evidence, giving an officer a false name, and fled the police during the incident that led to the current charges.

Perkins proffered several facts that suggest he would not be a risk of flight or nonappearance. He is a life-long resident of Lexington, Kentucky. He lives with his mother and could return to that residence if released. Perkins is a father to two young children who live with their mother in Georgetown. His children's mother attended the hearing in a show of support for Perkins. Perkins also has two brothers who both live in Lexington; one of whom owns a handyman service where Perkins worked full-time prior to his arrest. Perkins cited to his successful completion of the Kentucky drug court program and his time on release with electronic monitoring while he was in that program as evidence that he would comply with court orders and appear at future hearings.

Weighing the facts, the Court concludes the United States proved that Perkins is a risk of nonappearance. The Court is convinced by Perkins's prior record, including failing to appear for a state felony case, that he poses a risk of nonappearance in this case. *See United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating). His employment situation is unverified and spurious. And although the Court appreciates his mother's willingness to allow him to reside with her, he has lived with her throughout the past four years while he has committed several controlled substance offenses. That living situation does not seem to deter his criminal conduct. Unfortunately, his risk of nonappearance cannot be mitigated by conditions, as evidenced by Perkins's history of violating

his state pretrial release in 2019. Thus, the Court finds that flight-based detention of Perkins is appropriate.

**B.     RISK OF DANGER**

Though the Court has found pretrial detention is appropriate based on the risk of nonappearance that Perkins poses, the Court will analyze danger-based detention in the interest of thoroughness. The Court finds that conditions would not effectively address the appreciable danger of continued trafficking activity and further finds that the United States has shown by clear and convincing evidence that danger-based detention is required.

**1.     Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance[.]" 18 U.S.C. § 3142(g)(1). The nature of the offense favors Perkins's detention.

The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of drug offenses such as those alleged here. The United States presented the testimony of DEA Task Force Officer Thomas Clements at the detention hearing. [DE 8]. TFO Clements provided additional details about the circumstances of the offense that led to the Complaint in this case. TFO Clements described that Perkins was driving a vehicle that was the target of a search warrant. Upon seeing law enforcement approaching, Perkins attempted to flee the scene, but was quickly apprehended. Perkins was searched, and on his person law enforcement found three suspected oxycodone pills and 66 grams of fluorofentanyl. Law enforcement also searched the vehicle Perkins had been driving and located approximately 599 grams of methamphetamine, 34 grams of cocaine, 38 grams of cocaine base (crack cocaine), 217 grams of suspected fluorofentanyl, and 58 grams of suspected fentanyl.

The nature of trafficking in narcotics, especially fentanyl and its analogs (such as fluorofentanyl) is dangerous to the community. The circumstances of this these allegations, as TFO Clements described, indicate the Complaint did not fully capture the seriousness of the danger, because Perkins was found with a smorgasbord of narcotics in his vehicle beyond those charged in the Complaint. The nature and circumstances of this crime alleged weigh in favor of detention here.

2. **Weight of the Dangerousness Evidence**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Court engages no elemental assessment of the alleged offenses and makes no "pretrial determination of guilt[.]" *Id.* (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)).

The Court does, however, examine the intersection of the factors in § 3142(g)(1) and (g)(3). The instant allegations, if true, appear to be a continuation of Perkins's record of nearly continuous criminal activity since he was 17 years old. The nature and circumstances of the current allegations, as explained above, suggest Perkins is trafficking in numerous types of narcotics. Considering these facts with Perkins's history detailed below, the weight of his dangerousness is heavy. This factor favors detention.

3. **History and Characteristics**

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3)(directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Perkins is in good physical and mental condition. [Pretrial Services Report at 2]. He has been working full-time for his brother at a handyman service for the past year. [Pretrial Services Report at 2]. Perkins admitted to being a frequent marijuana user beginning at age 16 and a regular Percocet user beginning at age 18, continuing until he entered Kentucky drug court two years ago. [Pretrial Services Report at 2]. Perkins asserts he has not used substances in the past two years.

Perkins' criminal history is particularly concerning. In 2013, Perkins was convicted of second-degree robbery and possession of a handgun by a minor. [Pretrial Services Report at 3]. Between 2017 and 2019, Perkins was convicted being a felon in possession of a handgun, possession of cocaine, receiving stolen property, possession of heroin, and trafficking in cocaine. [Pretrial Services Report at 3-5]. Upon Perkins' conviction for possession of heroin and trafficking in cocaine in 2019, Perkins' sentence was suspended, and he was placed in the Kentucky drug court program. Perkins' successfully completed drug court and his term of supervision expired on March 3, 2022. [Pretrial Services Report at 4-5]. The incident that led to the charges in this case occurred on March 24, 2022. Perkins was out of drug court for only *three weeks* when he was allegedly found with 66 grams of fluorofentanyl on his person and a large amount of methamphetamine, cocaine, crack cocaine, fluorofentanyl, and suspected fentanyl in the vehicle he was driving. [DE 1]. It appears that Perkins has an escalating history of drug trafficking, both in the type of narcotics he is trafficking and in the quantities of drugs he is trafficking. It further appears from his criminal record that Perkins reoffends by possessing or trafficking in narcotics very soon after each conviction. This factor weighs decidedly in favor of detention.

**4.       Nature and Seriousness of the Danger Risk**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The nature of the potential danger associated with the continuance of trafficking in controlled substances, particularly fluorofentanyl, is grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"). The United States argued Perkins poses a risk to the community if released because his past indicates he is likely to continue criminal activity if released.

Perkins's criminal record supports the government's contention. In drafting the BRA, Congress determined that "drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989). Specifically, "the risk of continued narcotics trafficking on bail constitutes a risk to the community." *Id.*; *See United States v. Beard*, 528 F.Supp.3d 764, 774–75 (N.D. Ohio, 2021) (Finding that detention is appropriate where "the record establishes that [the defendant] has not complied with any other conditions of supervision, whether post-release control or pretrial release on bond in State court and there is no reason to believe things will be different now" and the record also reflects low-level criminal enterprise activity.); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).

As outlined above, Perkins allegedly committed the instant drug offenses three weeks after completing state drug court. [Pretrial Services Report at 4-5]. State bond conditions in 2019 did

not discourage his alleged conduct, as he violated those conditions and had his bond revoked. [Pretrial Services Report at 4]. If past conduct is predictive of future behavior, Perkins has proven to the Court that he will not reform his behavior if released. The nature and seriousness of the danger to the community if Perkins is released includes narcotics trafficking and a history of firearms charges. [Pretrial Services Report at 3-5]. *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home). The risks of releasing Perkins are too great, and Perkins's history proves those risks cannot be mitigated with bond conditions.

### III.  CONCLUSION

For the stated reasons, the Court finds that the United States proved that Perkins is an irremediable flight risk based on facts supported by preponderance of the evidence and proved by clear and convincing evidence that he poses a risk of danger to the community that cannot be mitigated with conditions. Therefore, the Bail Reform Act mandates detention. The Court has assessed the record, the testimony at the hearing, contemplated the risks, evaluated conditions, and determined that there exist no conditions that will reasonably assure that the safety of others or the community if Perkins is released. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Perkins.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 10th day of May, 2022.

